UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ADAM LESLIE-DAVID KOLB | CIVIL ACTION |
| VERSUS | NO. 21-09 |
| CAROL JORDAN, ET AL. | SECTION: "J"(1) |

### REPORT AND RECOMMENDATION

Plaintiff, Adam Leslie-David Kolb, a state prisoner, filed this *pro se* and *in forma pauperis* federal civil action pursuant to 42 U.S.C. § 1983.[1]  He sued Carol Jordan, William Seal, and Willie Cochran, claiming that the defendants violated his rights in various respects at the Rayburn Correctional Center in Angie, Louisiana.[2]

### I. Motion to Dismiss

The defendants have filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[3]  Plaintiff opposes that motion.[4]

### A. Rule 12(b)(1)

Where, as here, "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  Pursuant to Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks

---

[1] In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.
[2] Rec. Doc. 1.
[3] Rec. Doc. 13.
[4] Rec. Doc. 22.

the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation marks omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." Ramming, 281 F.3d at 161 (citations omitted).

The defendants appear to make two arguments premised on Rule 12(b)(1). One of those is well taken; the other is not.

The defendants first appear to argue that the Eleventh Amendment deprives the Court of subject-matter jurisdiction over the claims for monetary damages asserted against them in their official capacities. On that point, they are obviously correct.

"A suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment." Chaney v. Louisiana Work Force Commission, 560 F. App'x 417, 418 (5th Cir. 2014); accord Williams v. Thomas, 169 F. App'x 285, 286 (5th Cir. 2006); Watson-Buisson v. Louque, Civ. Action No. 12-1871, 2013 WL 5236611, at *1 (E.D. La. Sept. 13, 2013).[5]  "When the Eleventh Amendment applies, [federal] courts lack subject-matter jurisdiction over the claim." Bryant v. Texas Department of Aging and Disability Services, 781 F.3d 764, 769 (5th Cir. 2015). Here, the defendants are state employees

---

[5] As the United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. ... By statute, Louisiana has refused any ... waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (citations and quotation marks); Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 313-14 (5th Cir. 1999).

2

working at the Rayburn Correctional Center, a prison operated by the Louisiana Department of Public Safety and Corrections. Therefore, any official-capacity claims asserted against them for monetary damages are barred by the Eleventh Amendment, and so this Court clearly lacks subject-matter jurisdiction to consider them. See, e.g., Demouchet v. Rayburn Correctional Center, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008). Accordingly, the defendants' motion should be granted with respect to those claims, which should be dismissed pursuant to Rule 12(b)(1).

The defendants also appear to argue that dismissal of plaintiff's remaining claims is likewise appropriate under Rule 12(b)(1) because he has failed to demonstrate that his federal claims are non-frivolous. On that point, the Court disagrees.

It is true that a court may grant dismissal under Rule 12(b)(1) "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial or frivolous." Carmichael v. United Technologies Corp., 835 F.2d 109, 114 (5th Cir. 1988) (quotation marks omitted). However, that exception is a limited one which is "intended to allow jurisdiction dismissals only in cases where the federal claim is clearly immaterial or insubstantial" and is applicable "only where the plaintiff's claim has no plausible foundation or is clearly foreclosed by a prior Supreme Court decision." Id. (quotation marks omitted). Here, not all of plaintiff's remaining claims qualify as frivolous, and so it is more appropriate consider those claims under Rule 12(b)(6) than under Rule 12(b)(1). See Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir. 1981); see also Morales-Garza v. Lorenzo-Giguere, 277 F. App'x 444, 446 (5th Cir. 2008).

### B.  Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted.  In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted).  However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citation, footnote, and quotation marks omitted).

In the instant case, plaintiff has submitted an extensive complaint detailing the various ways in which the defendants purportedly violated his rights over many months beginning in June of 2020.  The events he recounts are similar and interrelated.  Although he provides no clear delineation of his causes of actions, the defendants interpret the complaint as asserting two claims: one for sexual assault and one for retaliation.  For the reasons noted *infra*, the Court finds the defendants' interpretation of plaintiff's allegations to be too narrow; however, for the limited purpose of considering the instant motion, the Court will address the claims as identified by the defendants.

### 1. "Sexual Assault"  Claim

In the complaint, plaintiff alleges that defendant Cochran stated, "If you keep messing with my captain I'ma f*ck you up!"[6]  Plaintiff also states that an individual at the prison then "advised that I had all rights to pursue a PREA claim since Mr. Cochran's intentions on exactly HOW he was going to 'F*ck me up' were unclear.  He could've meant it sexually …."[7]

---

[6] Rec. Doc. 1, p. 4.
[7] Id. at pp. 4-5.  "PREA" is an acronym referring to the Prison Rape Elimination Act.  As one commenter has noted:

The defendants interpret those allegations as asserting a claim for sexual assault. The Court disagrees, because plaintiff does not allege that a physical assault of any kind actually occurred. In that no such sexual assault claim has in fact been asserted, the Court need not address the defendants' arguments as to why such a claim would fail.

That said, while the foregoing allegations do not assert a claim of sexual assault, they do assert a different type of claim: a claim of **verbal abuse**. However, for the reasons explained *infra*, that verbal abuse claim should be dismissed pursuant to the Court's screening authority.

---

> Congress implemented the Prison Rape Elimination Act (PREA) in 2003 in order to illuminate the inmate sexual assault crisis that is plaguing prisons in this country and to eradicate that crisis. The PREA established a "zero-tolerance standard" for inmate sexual assault and proposed new techniques, specialized training, and general education sharing amongst staff and inmates. Standards were developed as well as a Prison Rape Elimination Commission (PREC). The PREA was created to reduce and prevent sexual assaults behind bars, and the PREC was created to ensure the new standards were issued, followed, and that research was conducted on this subject. The PREA, coupled with the PREC enforcing it, was meant to "increase the data and information on the incidence of prison rape to help improve management and administration in regard to sexual violence in correctional facilities."
>
> The PREA further established a set of specific guidelines for prisons to follow. First, the agency must create a zero-tolerance written policy. This policy must be aimed at responding to sexual assaults, and how the agency will meet this goal through prevention and detection. The agency must also have a PREA coordinator. This coordinator ensures that the agency is complying with the PREA standards and implementing agency efforts. The agency must also have a PREA compliance manager if the agency has two or more facilities. This manager coordinates the PREA compliance amongst all the facilities within the agency. Both the coordinator and the compliance manager are employed by the agency in order to help them develop and oversee their compliance with the PREA standards.

Cierra Simpson, Comment, <u>Inevitable Horrors: Sexual Assault in Prison</u>, 60 St. Louis U. L.J. 145, 162-63 (Fall 2015) (footnotes omitted). It has been noted:

> While it is true that PREA was enacted in an effort to reduce the occurrence of rapes in prisons by developing and implementing national standards and increasing the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape, nowhere in PREA is there language to suggest that it was created to provide a private cause of action or a federal right that could be enforced in a section 1983 action.
> … The PREA simply does not create a private right of action.

<u>Herndon v. Tanner</u>, Civ. Action No. 17-02350, 2017 WL 3841836, at *4 (E.D. La. July 26, 2017) (citation, quotation marks, and brackets omitted), <u>adopted</u>, 2017 WL 3840857 (E.D. La. Sept. 1, 2017).

## 2. Retaliation Claims

The defendants also note that plaintiff asserts claims of illegal retaliation. In broad strokes, plaintiff alleges that he was experiencing problems with the jail's handling of his mail, which he apparently concedes began as simple negligent mishandling of the mail. However, he alleges that matters subsequently took a sinister turn after he began complaining about the mail service. Specifically, he alleges that, as a direct result of his complaints, he was subjected to two forms of retaliation. First, the defendants began intentionally tampering with his mail, including deliberately interfering with – and at times destroying – his mail. Second, he was falsely charged with disciplinary infractions.[8]

With respect to such retaliation claims, the United States Fifth Circuit Court of Appeals has held: "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (citation, internal quotation marks, and ellipsis omitted).

---

[8] As to that second contention, the Court takes care to note that the fact that plaintiff was ultimately convicted of some of those disciplinary charges is not alone dispositive of his retaliation claims. "[F]avorable termination [of related disciplinary proceedings] is not a requisite of a retaliatory interference claim. … [A] retaliation claim … focuses on the interference, asking only whether there has been an obstruction of the exercise of a constitutional right." Woods v. Smith, 60 F.3d 1161, 1164-65 (5th Cir. 1995) (5th Cir. 1995). The Fifth Circuit further explained: "We emphasize that our concern is whether there was retaliation for the exercise of a constitutional right, separate and apart from the apparent validity of the underlying disciplinary report. An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." Id. at 1165 (footnotes omitted). Nevertheless, the Fifth Circuit cautioned: "To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident – such as the filing of disciplinary reports as in the case at bar – **would not have occurred**. This places a significant burden on the inmate. … **Although we decline to hold as a matter of law that a legitimate prison disciplinary report is an absolute bar to a retaliation claim, the existence of same, properly viewed, is probative and potent summary judgment evidence**, as would be evidence of the number, nature, and disposition of prior retaliation complaints by the inmate." Id. at 1166 (emphasis added; footnotes omitted).

In their motion, the defendants argue that plaintiff fails to adequately allege that the retaliation was prompted by his exercise of "a specific constitutional right."[9] However, in making that argument, the defendants appear to suggest that the right at issue here was plaintiff's right to send and receive mail, a right which they opine is limited in nature and has obscure contours.[10] But the Court interprets plaintiff's allegations differently.  Specifically, plaintiff does not appear to be alleging that the defendants retaliated against him simply because he was engaged in correspondence; rather, he appears to be alleging that he was retaliated against because he had the temerity to complain about the manner in which his correspondence was being mishandled.  In other words, the right really at issue here was not the right to send and receive mail; rather, it was the **right to file grievances**.  That right has clearly been found to be constitutionally protected. See, e.g., Butts v. Martin, 877 F.3d 571, 588 (5th Cir. 2017) ("Prison officials may not retaliate against prisoners for exercising their constitutional rights.  This includes a prisoner's First Amendment right to file grievances, as retaliation has the potential to discourage exercising that right." (citation omitted)); Reese v. Skinner, 322 F. App'x 381, 383 (5th Cir. 2009) ("Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities.").  The first prong is therefore met.

The defendants do not challenge the adequacy of plaintiff's allegations on the second and third retaliation-claim prongs.[11]  And, indeed, the Court finds that plaintiff has in fact properly alleged both retaliatory intent and adverse acts (namely, interference with and destruction of his mail, as well as false disciplinary charges).

---

[9] Rec. Doc. 13-1, p. 8.
[10] Id.
[11] Id. at p. 7.

As to the fourth prong, however, the defendants argue that plaintiff has not adequately alleged causation. The Court disagrees. Granted, the "causation" prong perhaps poses the greatest obstacle to prisoners asserting retaliation claims. Indeed, as noted *supra*, "[t]o state a claim of retaliation an inmate must … be prepared to establish that but for the retaliatory motive the complained of incident … **would not have occurred**." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (5th Cir. 1995) (emphasis added). "This places a significant burden on the inmate," because "[m]ere conclusionary allegations of retaliation" will not suffice; rather, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." Id. (quotation marks omitted).

Here, the Court finds that plaintiff has adequately alleged "a chronology of events from which retaliation may plausibly be inferred." Specifically, he alleges that, as a result of his complaints, he was subjected to the following adverse actions: (1) Cochran threatened him with violence;[12] (2) Jordan had him improperly placed on suicide watch;[13] (3) the incidents of mail tampering escalated to the point that they were occurring daily;[14] (4) Cochran warned that if plaintiff kept complaining he would be sent to Level 1 lockdown, i.e. the most draconian level which results in a prisoner losing access to his personal property;[15] and (5) a torrent of disciplinary charges suddenly began to be issued to him, despite the fact that he had received no such write-ups in the prior two years and only one "in 3 years and 4 months prior"[16] to his complaints. That final allegation is particularly concerning, in that an allegation of such a rapid and anomalous escalation of sanctions after a prisoner's filing of grievances can obviously constitute a sufficient

---

[12] Rec. Doc. 1, p. 4.
[13] Id. at p. 5.
[14] Id. at p. 6.
[15] Id. at p. 8.
[16] Id. at p. 9. He further alleges that he was told by other prison officials that the disciplinary write-ups were unjustified and that that he was "encouraged" to keep all of his grievances concerning harassment "in the system for [his] protection." Id. at p. 7.

"chronology of events" to allow a retaliation claim to proceed. See, e.g., Hope v. Harris, ___ F. App'x ___, ___, 2021 WL 2523973, at *6 (5th Cir. June 18, 2021).

Because plaintiff has sufficiently alleged all four of the required prongs for a retaliation claim, the defendants' motion to dismiss should be denied with respect to his retaliation claims, and those claims should be allowed to proceed pending further development.[17]

## II.  Screening

In addition to addressing the defendants' motion, it is also appropriate at this juncture for the Court to conduct the screening required by federal law.

Specifically, with respect to actions, such as this one, which are filed *in forma pauperis*, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)     is frivolous or malicious;
> (ii)    fails to state a claim on which relief may be granted; or
> (iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

Moreover, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A.  That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

---

[17] That, of course, should not be interpreted as indication that plaintiff's retaliation claims will necessarily ultimately succeed.  At this stage of the proceedings, the question is only whether plaintiff's allegations are sufficient to overcome a motion to dismiss.  They are.  Whether he can ultimately **prove** his allegations, as will be required in the later stages of the proceedings, is not before the Court at this time and remains to be seen.

governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

As noted *supra*, the Court finds that the defendants in their motion have too narrowly interpreted plaintiff's complaint as asserting claims only for sexual assault and retaliation. The Court finds that plaintiff's complaint, liberally construed,[18] **also** asserts the following substantive claims not specifically addressed by the defendants in the instant motion to dismiss: Mail Tampering; Destruction of Personal Property; Verbal Abuse; and False Disciplinary Charges. However, of those four claims, all but the first should be dismissed pursuant to the foregoing screening authority for the following reasons.

### A.  Mail Tampering

As noted, plaintiff alleges that the defendants deliberately interfered with his mail. If plaintiff's allegations are true, he has stated a nonfrivolous claim that his right to freedom of speech under the First Amendment has been violated. See Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993).[19] Because the Court has no basis for finding that plaintiff's mail tampering claim is facially frivolous, that claim should be allowed to proceed pending further development.

---

[18] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).
[19] An inmate's allegations of mail tampering can also implicate his First Amendment right of access to the courts. See Walker, 4 F.3d at 413. However, "[t]he right of access to the courts is implicated only when the mail is legal in nature, while the right to free speech is relevant to claims involving both legal and non-legal mail." Monterroso Navas v. JPCC/Correct Health, Civ. Action No. 18-6846, 2019 WL 2397221, at *11 (E.D. La. Mar. 29, 2019), adopted, 2019

## B. Destruction of Personal Property

Plaintiff also claims that his personal property was lost, negligently or intentionally destroyed, and wrongfully retained by the defendants. However, even if that is true, it is not actionable in federal court under 42 U.S.C. § 1983 for the following reasons.

In Parratt v. Taylor, 451 U.S. 527 (1981), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, negligently deprives a prisoner of his property, there is no constitutional violation if the state provides an adequate post-deprivation remedy. In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended that holding to intentional deprivations of property. In Daniels v. Williams, 474 U.S. 327, 330-31 (1986), the Supreme Court then overruled Parratt in part, holding that merely negligent deprivations of property simply do not implicate constitutional protections at all.

Therefore, it is of no consequence whether plaintiff is alleging that he was deprived of his property through negligence or intentional acts, because "in neither instance does he state a valid § 1983 action for deprivation of property." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). To the extent that he is claiming that he was deprived of his property as a result of the defendants' negligence, Daniels bars his claim. To the extent that he is claiming that the defendants intentionally destroyed or retained his property, Hudson bars his claim because Louisiana law clearly provides him with an adequate post-deprivation remedy, i.e. a tort suit brought in state court. See Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); see also Bennett v. Louisiana

---

WL 2395541 (E.D. La. June 6, 2019). Plaintiff has clearly alleged tampering with his **personal** mail; however, at this point, it is unclear to what extent, if any, he is alleging tampering with his **legal** mail.

If plaintiff is alleging that his access to the courts was violated by tampering with his legal mail, it must be noted that he can prevail on that claim only if he suffered actual prejudice. Walker, 4 F.3d at 413 ("In order for [an inmate]'s claim to rise to the level of a constitutional violation of his right to access to the courts, he must allege that his position as a litigant was prejudiced by the mail tampering."). However, the requirement of legal prejudice does **not** apply to a free-speech claim. Every v. Jindal, 413 F. App'x 725, 727 (5th Cir. 2011).

11

Department of Public Safety and Corrections, No. 02-30593, 2003 WL 1109690, at *1 (5th Cir. Feb. 19, 2003); Odom v. St. Tammany Parish S.O., Civ. Action No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009).[20]  Accordingly, plaintiff's claims concerning his personal property should be dismissed.

### C.  Verbal Abuse

As already noted herein, plaintiff also alleges that defendant Cochran warned him:  "If you keep messing with my captain I'ma f*ck you up!"[21]  In addition, on another occasion, Cochran allegedly threatened:  "If you keep writing letters to the Warden and the Captain whenever I build a case on you, you won't come back from level 1 [lockdown]."[22]

To the extent that plaintiff is claiming that such verbal threats violated his constitutional rights, those claims fail.  While it is unseemly for jail officials to verbally abuse inmates or threaten inmates who have little or no ability to respond without subjecting themselves to a disciplinary action (or worse), such purely verbal abuse simply does not run afoul of any federal constitutional protection.  See, e.g., Orange v. Ellis, 348 F. App'x 69, 72 (5th Cir. 2009) ("[C]laims of verbal harassment do not reveal a constitutional violation. Mere words are not sufficient to support a Section 1983 claim." (citation omitted)); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983."); Moody v. Lee, Civ. Action No. 13-2745, 2014 WL 107944, at *5 (W.D. La. Jan. 9, 2014) ("[V]erbal threats or taunts, without more, do not support a claimed constitutional violation.  Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under § 1983.  Plaintiff's

---

[20] The Court notes that Parratt bars such claims only if the defendants' actions were random and unauthorized; it does not bar such claims if the defendants' actions were authorized by the jail's policies or procedures.  Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004); see also Calhoun v. Collier, ___ F. App'x ___, 2021 WL 4156269, at *1 (5th Cir. Sept. 13, 2021).  Here, however, plaintiff is clearly alleging that the defendants were acting unlawfully and contrary to the applicable policies and procedures; therefore, Parratt applies.
[21] Rec. Doc. 1, p. 4.
[22] Id. at p. 8.

claim to the contrary ... lacks an arguable basis in law and fact and must ... be dismissed as frivolous." (citations omitted)). Therefore, even if Cochran did in fact make these statements as alleged, that, without more, did not violate plaintiff's constitutional rights. Accordingly, his verbal abuse claims should likewise be dismissed.

### D. False Disciplinary Charges

In addition to the retaliation claims previously discussed, it appears that plaintiff may also be attempting to assert related, albeit separate and legally distinct, claims challenging the validity of the disciplinary charges against him. If so, those separate independent challenges fail.

To the extent that plaintiff is claiming that the underlying charges were factually false, that claim is a non-starter. The United States Fifth Circuit Court of Appeals has held that a prisoner's claim that he was he was falsely accused of a disciplinary infraction "is indistinguishable from a malicious prosecution claim." Ordaz v. Martin, No. 93-4170, 1993 WL 373830, at *6 (5th Cir. Sept. 15, 1993); see also Bradley v. Hammonds, No. 97-30287, 1998 WL 699106, at *2 (5th Cir. Sept. 22, 1998). However, the Fifth Circuit has held that there is no "freestanding constitutional right to be free from malicious prosecution." Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003). Therefore, a prisoner's claim that disciplinary proceedings were wrongly initiated against him fails to state a claim upon which relief may be granted. Figgs v. Vrazel, 106 F. App'x 260, 261 (5th Cir. 2004); accord Williams v. Dretke, 306 F. App'x 164, 166 (5th Cir. 2009); Palmisano v. Bureau of Prisons, 258 F. App'x 646, 648 (5th Cir. 2007) (noting that a prisoner's "assertion that defendants brought false charges against him does not alone implicate his constitutional rights"). See also Harris v. Smith, 482 F. App'x 929, 930 (5th Cir. 2012) ("A claim that a prisoner was improperly charged with things he did not do, standing alone, does not state a due process claim." (quotation marks omitted)).

Moreover, to the extent that plaintiff is contesting the validity of his resulting disciplinary convictions, his claims are barred by Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the United States Supreme Court held:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84 (citations omitted). The Supreme Court further held that a prisoner's "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 486. The United States Fifth Circuit Court of Appeals has noted that after Sandin "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the **duration** of confinement, will henceforth qualify for constitutional 'liberty' status." Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added). Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the **quantity of time** rather than the **quality of time** served by a prisoner." Madison v. Parker, 104 F.3d 765, 769 (5th Cir. 1997) (emphasis added).[23] Here, plaintiff does not allege that his

---

[23] The Court acknowledges that this general rule does not apply when the conditions at issue are unusually onerous or the disciplinary confinement is of a prolonged duration. For example, the United States Supreme Court has held that solitary confinement in a "Supermax" facility imposed an atypical and significant hardship that created a liberty interest in avoiding such a placement when all of the following factors were taken together: almost all human contact, including cell to cell conversation, was prohibited; the light was on for 24 hours per day; exercise was for one hour per day, but only in a small indoor room; the placement was indefinite and reviewed only annually; and the placement disqualified an otherwise eligible inmate from parole consideration. Wilkinson v. Austin, 545 U.S. 209, 223-24 (2005). However, plaintiff does not allege that his disciplinary convictions resulted in any conditions that even begin to rise to the level of conditions described in Wilkinson. Moreover, he does not allege that his disciplinary sentences were of such an extended duration that they would come close to approaching a length that would be sufficient to give rise to a liberty interest. See, e.g., Jones v. Baker, 155 F.3d 810, 812-13 (6th Cir. 1998) (holding that administrative segregation for two and one-half years did not give rise to a liberty interest); Griffin v. Vaughn, 112 F.3d 703, 708 (3rd Cir. 1997) (finding that inmate's placement in administrative segregation for fifteen months did not give rise to a liberty interest); Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008) (finding that protective lockdown for twelve months did not give rise to a liberty interest).

disciplinary convictions affected the duration of his imprisonment.[24] Because plaintiff's disciplinary convictions affected only the "quality," not the "quantity," of the time he must serve, Sandin bars any due process claims related to the disciplinary proceedings.

### III. Motion for Temporary Restraining Order/Preliminary Injunction

Lastly, the Court notes that plaintiff has filed a "Motion to Request an Immediate Preliminary Injunction or Temporary Restraining Order."[25] However, despite his request for a temporary restraining order, his motion must be construed solely as one for a preliminary injunction because the relief he seeks would extend beyond the ten-day limit of a temporary restraining order. Neal v. Federal Bureau of Prisons, 76 F. App'x 543, 545 (5th Cir. 2003). The defendants oppose that motion.[26]

---

[24] It must be noted that Sandin does not foreclose a due process claim if the disciplinary punishment included a forfeiture of "good time" credit. See Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997); Bean v. McConnell Unit, C.A. No. C-06, 223, 2006 WL 2346295, at *3 (S.D. Tex. Aug. 11, 2006). However, plaintiff does not allege that he lost "good time" as part of his punishments.
    Nevertheless, out of an abundance of caution, the Court makes an additional observation: Even if plaintiff lost "good time" credit in the disciplinary proceedings, his § 1983 claims would still be barred, albeit for a different reason: Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (footnote omitted). Heck has since been extended also to bar claims for declaratory and injunctive relief. See, e.g., Walton v. Parish of LaSalle, 258 F. App'x 633, 633-34 (5th Cir. 2007); Collins v. Ainsworth, 177 F. App'x 377, 379 (5th Cir. 2005); Shaw v. Harris, 116 F. App'x 499, 500 (5th Cir. 2004). It has also been extended to encompass disciplinary convictions. See, e.g., Aucoin v. Cupil, 958 F.3d 379, 382 (5th Cir. 2020) ("Heck prohibits suit under § 1983 if success on the claim would necessarily imply that a prior conviction or sentence is invalid. This includes not just criminal convictions but also disciplinary proceedings …." (citation omitted)), cert. denied, 141 S. Ct. 567 (2020). Because he has not alleged that his disciplinary convictions have been overturned, Heck would apply and bar his claims. See, e.g., Spann v. Strain, 726 F. App'x 265, 266 (5th Cir. 2018).
[25] Rec. Doc. 21.
[26] Rec. Doc. 24.

15

Under the law of this Circuit, a plaintiff must make a clear showing that his case satisfies the following four criteria before he can receive a preliminary injunction: (1) a substantial likelihood exists that he will succeed on the merits of his claim; (2) a substantial threat of irreparable harm exists if the injunction is not granted; (3) the threatened injury outweighs any harm to the defendants if the injunction is granted; and (4) the injunction will not undermine the public interest.  See Valley v. Rapides Parish School Board, 118 F.3d 1047, 1051 (5th Cir. 1997); see also Ingebresten v. Jackson Public School District, 88 F.3d 274, 278 (5th Cir. 1996); Doe v. Duncanville Independent School District, 994 F.2d 160, 163 (5th Cir. 1993); Holland American Insurance Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985).  A preliminary injunction is therefore an "extraordinary remedy" which should be granted only if the movant has clearly carried the burden of persuasion on **all four** of the above prerequisites.  Mississippi Power & Light v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).  As a result, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule."  Id.

For the following reasons, the Court finds that plaintiff has not established that the extraordinary remedy is warranted in this case.

In his motion, plaintiff alleges that immediate injunctive relief is required to ensure that he will be able to pursue this lawsuit unhindered by any further persecution or retaliation at the hands of the defendants, including future instances of "unfair segregation" or "arbitrary disciplinary charges."  However, not only are plaintiff's fears purely speculative, any such court orders would effectively insulate him from any future disciplinary actions (irrespective of how warranted they might be), and they would therefore be an overbroad attempt by the Court to interject itself into matters of prison security, discipline, and classification.  Absent a compelling showing of necessity, which is sorely lacking here, intrusion by the federal courts into such sensitive matters

of state prison administration is to be avoided. See, e.g., Young v. Wainwright, 449 F.2d 338, 339 (5th Cir. 1971) (rejecting prisoner's request for "an injunction to obtain his permanent release from administrative segregation," noting, "[c]lassification of inmates is a matter of prison administration and management with which federal courts are reluctant to interfere except in extreme circumstances"). Such orders would therefore be contrary to the public interest. Moreover, it must be noted that to this point there is no evidence that any such actions have been taken against plaintiff which have hindered his ability to prosecute such this or other litigation.[27]

## RECOMMENDATION

It is therefore **RECOMMENDED** that the defendants' motion to dismiss, Rec. Doc. 13, be **GRANTED IN PART AND DENIED IN PART**. It is **RECOMMENDED** that the motion be **GRANTED** with respect to the plaintiff's claims for monetary damages asserted against the defendants in their official capacities and that those claims be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. It is **RECOMMENDED** that the motion be **DENIED** in all other respects.

It is **FURTHER RECOMMENDED** that plaintiff's federal civil rights claims against the defendants for verbal abuse and false disciplinary charges be **DISMISSED WITH PREJUDICE** as frivolous and/or failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

It is **FURTHER RECOMMENDED** that plaintiff's federal civil rights claims against the defendants concerning the loss, destruction, or retention of his personal property be **DISMISSED WITH PREJUDICE** as frivolous and/or failing to state a claim upon which relief may be granted

---

[27] For example, the Court notes that plaintiff just recently filed another lawsuit in this Court: Kolb v. Bickham, Civ. Action No. 21-1194 (E.D. La.).

17

pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), but **WITHOUT PREJUDICE** to his right to assert any related state-law claims concerning his property in the state courts.

It is **FURTHER RECOMMENDED** that plaintiff's federal civil rights claims against the defendants for retaliation and mail tampering be allowed to proceed pending further development and remain referred to the undersigned United States Magistrate Judge.

It is **FURTHER RECOMMENDED** that plaintiff's "Motion to Request an Immediate Preliminary Injunction or Temporary Restraining Order," Rec. Doc. 21, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __27th__ day of September, 2021.

_Janis Van Meerveld_
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**